FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR I 4 2017

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.C.T. 898 PRODUCTS, INC., | Case No. SA CV 16-0476 JCG |
| Plaintiff, | **JURY INSTRUCTIONS** |
| v. | |
| W.S. INDUSTRIES, INC., *et al*., | |
| Defendants. | |

## JURY INSTRUCTIONS

DATED: April 13, 2017

_____

HON. JAY C. GANDHI

# JURY INSTRUCTION NO. 1
## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

# JURY INSTRUCTION NO. 2

## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, A.C.T. 898 Products, Inc. ("ACT 898"), asserts the following claims against the defendant, W.S. Industries, Inc. ("WSI"):

(1) Federal Trademark Infringement

(2) Federal Unfair Competition & False Designation of Origin

(3) Federal False Advertising

(4) California Trademark Infringement

(5) California Common Law Unfair Competition

(6) California False Advertising

The plaintiff has the burden of proving each of these claims.

The defendant denies those claims and also asserts the following affirmative defenses:

(1) Statute of Limitations

(2) Lack of Notice of Registration

The defendant has the burden of proof on these affirmative defenses.

The plaintiff denies the defendant's affirmative defenses.

## JURY INSTRUCTION NO. 3

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## JURY INSTRUCTION NO. 4

## CORPORATIONS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

# JURY INSTRUCTION NO. 5
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

    1.    the sworn testimony of any witness;

    2.    the exhibits which have been received into evidence;

    3.    any facts to which the lawyers have agreed; and

    4.    any facts that I have instructed you to accept as proved.

# JURY INSTRUCTION NO. 6
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

### JURY INSTRUCTION NO. 7
### EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

# JURY INSTRUCTION NO. 8
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## JURY INSTRUCTION NO. 9
## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

# JURY INSTRUCTION NO. 10
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

# JURY INSTRUCTION NO. 11
## TAKING NOTES

You were told that you could take notes to help you remember the evidence. Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

# JURY INSTRUCTION NO. 12
## STIPULATIONS OF FACT

The parties have agreed to the following facts:

1.     ACT 898 is a California corporation that, since 1997, has been in the business of the manufacturing, distribution, and wholesale supply of beauty supply products, including acrylic nail brushes, across the U.S. and around the world.

2.     At all times relevant, WSI was a registered California corporation in good standing and is in the business of distributing and selling beauty supply products, including acrylic nail brushes.

3.     WSI and ACT 898 are competitors in the beauty supply industry.

4.     ACT 898 has never sold any products to WSI.

5.     ACT 898 has applied for and has obtained U.S. Trademark Registration number 3,893,221 (the "777 Mark"), which was registered on December 21, 2010, the Mark at issue in this litigation.

6.     The 777 Mark has not been cancelled or revoked.

7.     The 777 Mark has obtained status as an incontestable mark.

8.     ACT 898 has labeled its acrylic nail brushes with the 777 Mark and distributed them to its customers under separate invoices that include product descriptions that specify the 777 Mark.

9.     Around 2010, ACT 898 learned about WSI's sale of nail brushes bearing the 777 Mark.

10.     In 2010, WSI ordered acrylic nail brushes from an international supplier who offered brushes marked "777" for sale at an open air market.

11.     In 2010, WSI received its first order from LA City Nail and Beauty Supply, Inc. for acrylic nail brushes bearing the 777 Mark.

12.     Prior to receiving ACT 898's cease and desist letter, WSI sold acrylic nail brushes marked "777".

13.    On May 3, 2011, ACT 898 sent a cease and desist letter to WSI.

14.    On May 6, 2011, Vinh Lam sent a response on behalf of WSI, stating they were unaware that any company in WSI's market was using "777," that the products were available for purchase at an overseas marketplace and were pre-branded, and that WSI would immediately cease any further sale or use of the 777 mark.

15.    From May 6, 2011 through August of 2011, some of the acrylic nail brushes sold by WSI were sold under invoices that labeled the brushes as "777 Kolinsky England."

16.    From August of 2011 through the present, some of the acrylic nail brushes sold by WSI were sold under invoices that labeled the brushes as "Fiori777 Kolinsky England."

17.    Plaintiff is not prosecuting its claims based on the "777F" mark.

You must therefore treat these facts as having been proved.

# JURY INSTRUCTION NO. 13
## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

# JURY INSTRUCTION NO. 14
## EXPERT OPINION

You have heard testimony from Haley Eckhart and David Weiner who testified to opinions and the reasons for those opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

# JURY INSTRUCTION NO. 15
## PRELIMINARY INSTRUCTION—TRADEMARK

The plaintiff, ACT 898, seeks damages against the defendant, WSI, for trademark infringement and unfair competition.  The defendant denies infringing the trademark and unfairly competing. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you have heard during this trial.

## DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

## HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer.  Rights in a trademark are obtained only through commercial use of the mark.

## TRADEMARK INTERESTS

A trademark owner may enforce the right to exclude others in an action for infringement or for unfair competition.

## TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office.  Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to

prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate.

## LIKELIHOOD OF CONFUSION

To prove infringement, the plaintiff must prove, by a preponderance of the evidence, that the defendant, without the plaintiff's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of the plaintiff's mark in connection with the distribution or advertisement of goods, such that the defendant's use of the mark is likely to cause confusion as to the source of the goods.  It is not necessary that the mark used by the defendant be an exact copy of the plaintiff's mark.  Rather, the plaintiff must demonstrate that, viewed in its entirety, the mark used by the defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

## THE PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, ACT 898, contends that the defendant, WSI, has infringed ACT 898's trademark.  The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of a valid trademark and that the defendant infringed that trademark.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the defendant infringed the plaintiff's trademark.

## THE DEFENDANT'S BURDEN OF PROOF

The defendant contends that it did not have statutory or actual notice that the plaintiff owned the "777" mark at the time of purchasing the brushes, that the plaintiff did not incur any damages, and that the plaintiff failed to timely bring its claims.  The defendant has the burden of proving by a preponderance of the evidence that the defendant did not have notice that the plaintiff owned the "777" mark at the time the defendant purchased brushes, that the plaintiff brought its state law causes of action

after the time allowed by statute, and that the plaintiff did not suffer from actual damages.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true.

# JURY INSTRUCTION NO. 16
## DEFINITION—TRADEMARK

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.  A person who uses the trademark of another may be liable for damages.

# JURY INSTRUCTION NO. 17
## TRADEMARK LIABILITY—THEORIES AND POLICIES

The trademark laws balance three often-conflicting goals:  1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict.  Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law.  These facts are relevant to whether the defendant is liable for:

1.     infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers;

2.     unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods; and

3.     false advertising, by making a false statement that was material and that tended to deceive consumers, injuring the plaintiff in the market.

# JURY INSTRUCTION NO. 18

## INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADEMARK

On the plaintiff's claim for trademark infringement, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.      "777" is a valid, protectable trademark;

2.      the plaintiff owns "777" as a trademark; and

3.      the defendant used "777" without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

# JURY INSTRUCTION NO. 19
## INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK

I gave you Instruction Number 18 that requires the plaintiff to prove by a preponderance of the evidence the 777 Mark is valid and protectable and that the plaintiff owns the trademark.

One way for the plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibit 1 is a certificate of registration from the United States Patent and Trademark Office. It has been submitted by the plaintiff as proof of the validity of the plaintiff's federally registered trademark in the 777 Mark, and also proof that the plaintiff owns that trademark.

The facts recited in this certificate are that the plaintiff owns valid trademark rights in the 777 trademark.  However, the defendant submitted evidence to dispute these recitals.  The defendant alleges that the certificate cannot be considered proof of validity of the trademark.

# JURY INSTRUCTION NO. 20
## INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—
### *SLEEKCRAFT* TEST

You must consider whether the defendant's use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)  Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar mark.

(2)  Defendant's Use of the Mark. If the defendant and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)  Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's trademark in appearance, there is a greater chance that consumers are likely to be confused by the defendant's use of a mark.

(4)   Actual Confusion.  If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion.  However, actual confusion is not required for a finding of likelihood of confusion.  Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion.  As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion.  If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)   Defendant's Intent.  Knowing use by defendant of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6)   Marketing/Advertising Channels.  If the plaintiff's and defendant's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)   Consumer's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the plaintiff's and defendant's trademarks.

(8)    Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark.  If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

# JURY INSTRUCTION NO. 21
## INFRINGEMENT—ELEMENTS—OWNERSHIP—GENERALLY

The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer. A person also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant consumers, an association between the person and the mark prior to the alleged infringer's use.

If you find the plaintiff's "777" mark to be valid that is, inherently distinctive, you must consider whether the plaintiff used the "777" mark as a trademark for the plaintiff's nail brushes before the defendant began to use the "777" mark to market its acrylic nail brushes in the area where the plaintiff sells its nail brushes.

A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container.

# JURY INSTRUCTION NO. 22
## INFRINGEMENT—LIKELIHOOD OF CONFUSION—
## FACTOR—STRENGTH OF TRADEMARK

### Strength as a Factor for Evaluating Likelihood of Confusion

How strongly the plaintiff's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by the defendant is likely to create confusion with the plaintiff's mark.

The plaintiff asserts that "777" is a trademark for its goods. The plaintiff contends that the defendant's use of "777" in connection with the defendant's acrylic nail brushes infringes the plaintiff's trademark because it is likely to cause confusion.

### The Strength of Marks

The more distinctive and strong a trademark law is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1.   Commercial Strength: This is the amount of marketplace recognition of the mark; and

2.   Conceptual Strength: This is the placement of the mark on the spectrum of marks.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks may be strong and well known only in a certain market niche such as mountain climbing

1  gear, plumbing supplies, or commercial airplane electronics equipment, but relatively
2  weak outside that field.

3      **Conceptual Strength**: What is "conceptual strength?" All trademarks are
4  grouped into two categories: either inherently distinctive or not inherently distinctive.
5  If a mark is inherently distinctive it is immediately protected when first used. If it is
6  not inherently distinctive, to become a legally protected mark, a designation must
7  acquire distinctiveness in people's minds by becoming known as an indication of
8  source of goods or services. The law calls this "secondary meaning."

9      For determining the conceptual strength of a mark, trademarks are grouped on a
10  spectrum according to the nature of the mark. In the spectrum, there are three
11  categories of word marks that the law regards as being inherently distinctive: coined,
12  arbitrary and suggestive. Descriptive word marks are regarded as not being inherently
13  distinctive and require a secondary meaning to become a valid trademark.

14      **Coined** and arbitrary words are regarded as being relatively strong marks. A
15  coined word mark is a word created solely to serve as a trademark. For example,
16  "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

17      **Arbitrary** marks are words that in no way describe or suggest the nature of the
18  goods or services it is used with. For example, "apple" is a common word, but it does
19  not describe or suggest anything about the nature of "Apple" brand computers or smart
20  phones. It is an arbitrary word when used as a mark on those products and is said to be
21  conceptually strong as a mark.

22      Suggestive word marks are regarded as not being as conceptually strong as
23  coined or arbitrary marks. Suggestive trademarks suggest some characteristic or
24  quality of the goods or services with which they are used. If the consumer must use
25  her imagination or think through a series of steps to understand what the trademark is
26  telling about the product, then the trademark does not directly describe the product's
27  features, but merely suggests them. For example, the trademark "Tail Wagger" for
28  dog food merely suggests that your dog will like the food.

For example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

## JURY INSTRUCTION NO. 23
## TRADEMARK—FEDERAL UNFAIR COMPETITION

The plaintiff, ACT 898, claims the defendant, WSI, engaged in acts of unfair competition, including "palming off," under the Lanham Act.  To succeed on this claim, the plaintiff must prove that:

1.   The defendant sold goods bearing the "777" mark;

2.   The defendant did not have permission to use the "777" mark; and

3.   The defendant misrepresented the origin of goods sold under the "777" mark.

## JURY INSTRUCTION NO. 24
## TRADEMARK—UNFAIR COMPETITION—
## FALSE ADVERTISING UNDER LANHAM ACT

The plaintiff, ACT 898, claims the defendant, WSI, engaged in acts of unfair competition, including false advertising under the Lanham Act.  To succeed on this claim, the plaintiff must prove five things by a preponderance of the evidence:

1.      The defendant made one or more false statements of fact about the defendant's or the plaintiff's product.

2.      The statement actually deceived or had the tendency to deceive a substantial segment of the defendant's audience.

3.      The deception was likely to influence the purchasing decisions of consumers.

4.      The defendant caused the false statement to enter interstate commerce.  A false statement enters interstate commerce if the defendant's products are sold across state lines and the defendant's activities have a substantial effect on the plaintiff's business.

5.      The plaintiff has been or is likely to be injured as a result of the false statement.  Injury includes direct diversion of sales from the plaintiff to the defendant or a loss of goodwill associated with the plaintiff's products.

If you find that the plaintiff has proved each of these things, then you must find for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove any one of these things, then you must find for the defendant.

## JURY INSTRUCTION NO. 25
## CALIFORNIA TRADEMARK INFRINGEMENT

On the plaintiff's claim for California trademark infringement, the plaintiff has the burden of proving by a preponderance of the evidence that the defendant used, without the consent of the plaintiff, any reproduction, counterfeit, copy, or colorable imitation of a mark registered in connection with the sale, distribution, offering for sale, or advertising of goods or services on or in connection with which the use is likely to cause confusion or mistake, or to deceive as to the source of origin of the goods or services.

# JURY INSTRUCTION NO. 26
## UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW

The plaintiff, ACT 898, claims the defendant, WSI, has engaged in Unfair Competition under California common law.  Infringement of trademarks within the State of California constitutes unfair competition under California common law.  The plaintiff has the burden of proving by a preponderance of the evidence that the defendant infringed the plaintiff's valid trademark.  If you find that the plaintiff has not proved that the defendant infringed a valid trademark of the plaintiff, you should find for the defendant on this claim.

# JURY INSTRUCTION NO. 27
# FALSE ADVERTISING UNDER THE CALIFORNIA BUSINESS AND
## PROFESSIONS CODE

The plaintiff, ACT 898, claims the defendant, WSI, engaged in acts of false advertisement under the California Business and Professions Code.  To prevail on this claim, the plaintiff must prove that:

1. The defendant used a false or misleading advertisement likely to deceive members of the public;

2. The defendant knew the statement to be untrue or misleading or, with the exercise of reasonable care, should have known, the statement to be untrue or misleading; and

3. Because of the advertisement, the plaintiff lost money or property.

# JURY INSTRUCTION NO. 28
## STATUTE OF LIMITATIONS FOR CALIFORNIA TRADEMARK
## INFRINGEMENT CAUSE OF ACTION

Under the California Code of Civil Procedure, in order to bring a timely claim, the plaintiff is required to bring its state cause of action for trademark infringement within four years of discovering that its trademark was infringed.

# JURY INSTRUCTION NO. 29
## STATUTE OF LIMITATIONS FOR CALIFORNIA UNFAIR COMPETITION CLAIMS

Under the California Code of Civil Procedure, in order to bring a timely claim, the plaintiff is required to bring its state cause of action for unfair competition within four years of discovering that its trademark was infringed.

# JURY INSTRUCTION NO. 30
## STATUTE OF LIMITATIONS FOR CALIFORNIA FALSE ADVERTISING CLAIM

Under the California law, in order to bring a timely claim, the plaintiff is required to bring its state cause of action for false advertising within three years of discovering that its trademark was being falsely advertised.

# JURY INSTRUCTION NO. 31
## CALIFORNIA'S DISCOVERY RULE FOR STATUTE OF LIMITATIONS

If WSI proves that ACT 898's claimed harms occurred before March 11, 2012, ACT 898's lawsuit was still filed on time if ACT 898 proves that before that date, ACT 898 did not discover, and did not know of facts that would have caused a reasonable person to suspect, that it had suffered harm that was caused by someone's wrongful conduct.

# JURY INSTRUCTION NO. 32
## DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on its claims, you must determine if it is entitled to monetary damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.

To prove statutory damages, the plaintiff must prove all of the following:

1)      The defendant intentionally used in commerce a "counterfeit" mark;

2)      The defendant knew that the mark was a counterfeit;

3)      The defendant used the mark in connection with the sale, offering for sale or distribution of goods; and

4)      The defendant's use was likely to cause confusion, mistake or to deceive.

For this purpose, a "counterfeit mark" is:

1)      a nongenuine mark which is identical with or substantially indistinguishable from a registered mark;

2)      the registered mark is registered on the Principal Register for the same goods in connection with which the accused mark is being used;

3)      the registered mark is in use; and

4)      the accused use is not on or in connection with goods of which the producer was, at the time of production, authorized by the holder of the mark to use the mark for those types of good.

To prove actual damages, you should consider the following:

(1)     The injury to the plaintiff's reputation;

(2)     The injury to plaintiff's goodwill, including injury to the plaintiff's general business reputation;

(3) The lost profits that the plaintiff would have earned but for the defendant's infringement.  Profit is determined by deducting all expenses from gross revenue;

(4)     The expense of preventing customers from being deceived; and

(5)     The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

# JURY INSTRUCTION NO. 33
## TRADEMARK DAMAGES—PLAINTIFF'S STATUTORY DAMAGES

If you find that the defendant infringed on the plaintiff's registered trademark, you must determine if the plaintiff can recover statutory damages against the defendant, and if so, the amount of those statutory damages.

To recover statutory damages, the plaintiff must prove by a preponderance of the evidence (1) that the defendant's mark is a counterfeit of the plaintiff's registered trademark, and (2) that consumers were actually confused or deceived as a result of the defendant's conduct. Under the law, a counterfeit mark is defined as a mark that is identical to or substantially indistinguishable from the plaintiff's trademark.

The law permits recovery of only one award of statutory damages for each trademark infringed for each type of goods sold. This means that the statutory award cannot be multiplied by the number of counterfeit items that were sold or offered for sale.

If you find that the plaintiff is entitled to statutory damages, you must further determine whether the defendant's infringement was willful. Willful infringement under the law requires proof that a person acted voluntarily and intentionally and with the specific intent to commit the act. If you find that the defendant's infringement was not willful, you must award statutory damages not less than $1,000 or more than $200,000 per counterfeit mark per type of goods sold. If you find that the defendant's infringement was willful, you can award statutory damages no more than $2,000,000 per counterfeit mark per type of goods sold.

## JURY INSTRUCTION NO. 33.1
## DAMAGES – PLAINTIFF'S STATUTORY DAMAGES – WILLFULNESS – WILLFUL BLINDNESS

Willfulness can also be established by willful blindness. To be willfully blind, a person must take deliberate action to avoid confirming a high probability of wrongdoing.

# JURY INSTRUCTION NO. 34
## CALIFORNIA FALSE ADVERTISING LAW—RESTITUTIONARY DAMAGES

If you find for the plaintiff on its California false advertising claim, you may decide whether that conduct justifies an award of restitutionary damages, to restore to the plaintiff any money which may have been acquired by means of false advertising by the defendant.

# JURY INSTRUCTION NO. 35
## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

# JURY INSTRUCTION NO. 36
# COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including the court — how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**JURY INSTRUCTION NO. 37**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.